# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

EMMANUEL E. SEWELL, #266-700

Plaintiff,

v.

OFFICE OF THE ATTORNEY GENERAL ET AL.

Defendants,

\* Civil No. DKC-15-3040

FILED ___ ENTERED
LOGGED ___ RECEIVED

MAY 23 2016

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

\* \* \* \* \*

## DECLARATION IN OPPOSITION

I, Emmanuel E. Sewell, #266-700, do hereby declare under the penalty of perjury made subject to 28 U.S.C. §1746 that the following is true and correct to the best of my own personal knowledge and affirmatively affiant is competent to testify to the matters stated herein:

1. I am an inmate currently held at Roxbury Correctional Inst. 18701 Roxbury Rd., Hagerstown, MD 21746-9540 at all times mentioned.

2. I am competent to request the Court's Intervention to reconsider Motion For Appointment of Counsel ECF No. 3, based on, the fact that plaintiff on March 31st 2016 received documents from A. Otto, Deputy Clerk that plaintiff had 17 days to respond to Christine Coble's, Esy Motion to Dismiss and Summary Judgement, but, here again I have never received

-1-

any documents to provide the Court a opposition response. A significant prejudice to deny plaintiff adequate access to the court's, an "ongoing" problem.

3. The Attrny. Gen. Opp. Mtn. pg. 4 there is an genuine dispute of material fact because plaintiff only sent one (1) letter to the Fourth Circuit, and that, was the request for crisis intervention April 2nd 2015. The prejudice of the letter docketed May 4th 2015 should be considered a causal link between the numerous letters used against DKC-11-0614 consolidated cases and the Appeal docket was flooded with letters in plaintiff's name. (North Branch Corr. Unit #1 D and C Tiers).

Plaintiff did not send any further correspondence to the Fourth Circuit after filing August 3rd, 2015 Doc. 21, this is what plaintiff has been trying to show the Court that I have no exclusive control over any cases that is filed, because Appeal No. 15-6316 Doc. 28 and Doc. 11 is plaintiff's but Doc. 23-24 are not mine. This deliberate indifferent conduct should be seen as prisoner abuse, where plaintiff's legal documents, personal letters, and letters to the court's a rightful connection can be inferred concerning plaintiff's handwriting from stolen papers and documents. See, ECF No. 1 Declaration at P5 and Mtn. Corr. Jud. pg. 1 at 2 " evidence prevented from the court's decisions."

4. The Attrny. Gen. Opp. Mtn. pg. 5 State Habeas Corpus. On March 2nd 2016 Certified Mail #7013 2250 0001 3021 4988 was put in Dr. S. Banks, Psy. SNU Coord. care at 9:23am after over 60 days plaintiff never received endorsement signature nor

did plaintiff receive any receipt, this service was paid for (but deducted March 8th 2016 under Wexford Health Sources -21.80). What the Court will find, is that, for some odd reason when plaintiff and Dr. Banks left his office on March 2nd 2016 he tells Mrs. C. Finucane, "I'm on my way to the mailroom." The only other certified mail entry is on Feb. 27th 2015 -8.03. When I asked Dr. Banks, "What did you do with the signed money voucher I gave you March 2nd 2016?" He said, "I gave everything to Mr. Shetter, RCI Mailroom Supervisor." There is no Financial record of the certified mailing ever being processed, and that, ARP Coord. (The third one in 16 months) Mr. Striker refused to process the ARP signed by Sgt. M. Sadler 3-11pm shft. unit #1, and, uses irrational reasons why he refused to investigate ARP RCI #0303-16 that was submitted at the same time as the certified mail-ARP. See, Attachments #1-4 and ECF No. 23 Declaration Attachments #16-20, where Dr. S. Banks deliberate indifferent conduct was incorporated into pending matters. Appealed (By inmate Robert Shelton-unit #1 A Tier. He sent it in his name), to Commissioner, and, IGO Exec. Director April 17th 2016 (unit #1 CO II J. Miller 3-11pm Shft.) because D.O.C Commissioner Wayne A. Will failed to investigate misconduct signed April 8th 2016.

Intentionally causing confusion while irrationally preventing the plaintiff from responding to the Order of Judge Joseph A. Dugan, Jr. Plaintiff filed three motions for Appointment of Counsel¹ Jan. 2015, 2 Feb. 12th 2016 "Outstanding Motion", 3 March 2nd 2016 - none of these legal documents have ever been ruled on. Significant prejudices to prevent plaintiff from potential relief/release.

Officers' S. Sheppard, M. Bible, P. Burns, C. Younger and unknowns were taking turns using a master key to go into plaintiff's locked locker going through legal papers, several medical doc. concerning the April 28th 2014 incident at North Branch missing written by Laura

Booth, Psy. SNU Coord., concerning ligature marks on my neck and how plaintiff became unresponsive in her presence. Dr. Banks was alerted and asked, "Why is officer M. Bible, COII allowed back on SNU Tier after Warden R.E. Miller removed him for over 4 months?" He said, "because mentors and other inmates requested for him to come back." See, Attachment #5 Top pg. Note and btm. pg. Remedy.

Plaintiff would come back from Psychology pass open my locker and my legal papers would fall to the floor (the only way this can happen is if someone pulled-out the stacked documents), on Feb. 25th 2016 and March 31st 2016 after coming back from early morning passes 8:00am and 8:45am, Officer M. Bible comes on the SNU tier (No matter if he's working the tier, another tier, or working yard duty) and states, "I don't give a F@@K all he's going to do is write it up!" This man has constantly provoked me to lash-out violently at him. I just put my head-down take a deep breath and remain silent.

5. The Attrny. Gen. Opp. Mtn. pgs. 5-10 Medical and Mental Health Care. Although the Chronic Care program is run by Wexford Health Sources, Inc. RN Mindy Baker selects SNU inmates for a separate Chronic Care group that helps inmates' understand the uses for their specific chronic care meds.. See, ECF No. 4 Supp. Complnt. pg. 2 at II. Facts Ms. Baker has given no rationale as to, why plaintiff as a SNU chronic care patient was being deliberately excluded from participation, including, that J. Sowers, Case Manager also excluded plaintiff from the Mental Health group SNU and After Care inmates participate in, while plaintiff is completely excluded. Plaintiff has medically documented chronic care and mental health disabilities that the State Defendants intentionally ignored, that may show plaintiff is still being wrongfully discriminated against without any penological justifications. See, Attrny. Gen. Opp. pg. 6 "State

Defendants adopt the facts of ECF #21. See, ECF #23 Declaration Opp. Pll pg. 5 btm. Para.

Mrs. A. Ward, Psy. has provided misinformation, because she never informed me that RCI had a PTSD program, she enrolled plaintiff into Thinking Deciding And Change, then, I found-out that Facilitator E. Soffe, S.W. is the person to contact: She told plaintiff on the day (Dec. 17th 2015), she gave plaintiff a certificate of completion, "I know you would like to be placed on the waiting list for PTSD, but, I want to confer with Mrs. Ward first." Nothing happened. See, ECF No. 23 Attachment ARP Warden's response #16-17. The State Defendants are intentionally refusing to enroll plaintiff into PTSD program even after Warden R. Miller. and Dr. Murphy, Psy. Supervisor's referral. See, Attachments #6-9.

Mrs. Ward and Dr. Banks have reviewed documentary evidence that show sufficiently serious mental disabilities from head trauma's, medical poisoning, psychotrophic medical poisoning but still are so hardened, that they refuse to take meaningful actions to help plaintiff receive PTSD therapy.

During the months of last two weeks in March, April 6th, 13th, 20th 2016, First week May 11th 2016 SNU inmates denied group therapy while AfterCare inmates' had therapy groups on the same days - No one from Psychology told us anything until after the fact.

Plaintiff has been at RCI-SNU Tier Unit #1 D Tier for 16 months:

1. Chris Abumiyaq Age 25 dies in cell #7 (under suspicious circumstances);
2. Rodney Clinton Age 55 cell #4 leaves tier alive but never returns (Died from internal complications) He was used by NBCI Death Row inmates to spy on me whenever I put mail-out, he'd tell Death Row or an officer;
3. Jim-Bob Chubbie Age 42 cell #14 overdoses May 4th 2016 was sent to Hagerstown Hospital put on a ventillator...

-5-

A. No one investigated by talking to SNU inmates;

B. No one from Psychology or Security came to SNU tier to check-out what happened to either of them;

C. SNU inmates are afraid because you don't know what's going to happen from one day to the next;

D. Mental Health Regs. require SNU tier to have community meetings once a week it doesn't happen;

E. There are No trained Psy. Staff on 3-11pm Shft. to deal with any type emergency situation - Further the normal officers on receive 3 days of Spc. needs mental health training - inadequate and causes misconduct;

F. There are no trained staff to deal with SNU inmates proper needs 3-11pm Shft. hygiene, Laundry detergent, Linens exchange: Example - (Plaintiff is the "Unit"1 D Tier 3-11pm laundry-man, and if I don't use my personal detergent to help AfterCare, SNU, and other Mentally Challenged inmates), their clothes, linens remain "<u>Filthy</u>", and the Psychology staff don't care; officers tell inmates your not SNU - deny to help...

G. When SNU inmates' have serious issues with non-program inmate's put on the tier or, in court yard setting calling us, Stupid retards, and dirty Mother F@*kers, just two weeks ago SNU inmate A. Bell cell#17 was spit in the face by a gang member in the yard" Mentor Roger Thomas - Cell#36 goes to tier officer Mrs. Holt who deemed it not an emergency situation, so, it's not been dealt with. Dr. S. Banks took no meaningful action to safeguard his patient from further harm. Mrs. Finucane at a group therapy session 2015 to SNU inmate's that when these situations happen on the tier or wherever, just do your best to deal with it, No security or Psychology meaningful intervention.

SNU and AfterCare inmates are not receiving the appropriate care and protection from Predatory inmate's (even the one's living on the tier) in accordance to the Mental Health regs. Plaintiff, Aftercare inmate, and mentor tried to introduce a proposal for Life skills, Tutoring, Meditation/Stretching exercises (Eating right), based on, daily isolation and inactivity. Need to make healthier choices. Mrs. Ward, Dr. Banks, Mrs. Finucane, & Mrs. Denise Morgan, Asst. Warden

-6-

say, "give us the names of people who need help," we'll discuss this at the next SNU Team meeting, but, the people who make the decisions don't show-up." Dr. Banks in our last session 5-7-16 says, "Where's your L.S.T and M.S.H written proposal for SNU?" Plaintiff said, "Mr. Banks I'm mentally exhausted and I'm sure officer Bible is going through it as we speak." Then he changed the subject to the March 22nd 2016 Letter to Asst. Warden D. Morgan about "the predators being rotated (on-off-and-back on SNU Tier) and in the program." Harm to Special needs inmates' can be inferred. The SNU Team will not take meaningful actions to make SNU Tier a Program Community. There no risk-management or permanent safeguards, their being deliberately indifferent towards immediate mental health, well-being hygiene, lack of group therapy and no reinforcement of critical discussion issues, the needs of SNU tier inmates are being deliberately ignored. See, Exhibits #1 and #2 Proposals.

6. The Attrny. Gen. Opp. Mtn. pg. 8 On Oct. 20th 2015, what the State Defendants' are not telling the court is, "that Defendant Donald Newlin (Now Lieutenant) came to the therapy session after Mrs. Ward received the phone call and tapped on her window to signal her (Because he was removed from (Unit #1 3-11pm Sgt. for SNU) based on the Oct. 13th 2015 incident along with Steve Henrich, COII and officer Socks, COII - ECF No. 23 Declaration Attachments #16, 17 ARP), where the court's specially coded complaint was missing. When officer Socks served me, plaintiff asked, "is this all that's in the Legal mail?" [RCI doesn't allow inmates' to have any envelope mail comes in.] Socks, said, "unless I missed something." A week later plaintiff goes to the library to request 42 § 1983 complaint and the specially marked complaint was given to me by Muslim Law clerk. The BGF worker who did the magazines was given my mail because he

-7-

Lived on Unit #1 B Honor Tier (And now is no longer in the prison). Moreover, Mr. Newlin, Lt. stood outside of Mrs. Ward's door the whole time Lt. Appel and Mrs. Soffe, S.W. talked to me and Mrs. Ward. Mrs. Ward got upset ended the session and as we walked-out Lt. Newlin "Thanked Mrs. Ward for not saying anything..." On Oct. 21st 2015 some type of investigation was conducted because SMU-D Tier was locked-down and multiple inmates' called-out. See, Attachments #13-21 Letters to Warden Richard Miller and Asst. Warden Denise Morgan.

Mrs. Ward was protecting Lt. Boozel, Lt. Newlin, M. Bible and others (All are supposedly SMU Trained), because she personally knows about the mail tampering and have made phone calls verifying it, including, submitting evidence of her knowledge. See, ECF #21 Exhibit #1 at 61, 81, then, See Exhibit #6 Declaration pg. 2 at 12, and, Exhibit #7 at 25 Last para. On Feb. 20th 2015 Mrs. Ward met plaintiff for a individual therapy and called Baltimore Circuit Court, to see if they received my Habeas Corpus package - She confirmed they never got it nor exhibits etc., so, Mrs. Ward was given certified mail package with Habeas Pet., Mtn. Fr. Appnt. Counsel, & Exhibits. #7013 3020 0002-2261 0986: Signed and received by Donte Cole March 2nd 2015.

Mrs. Morgan, Asst. Warden had it investigated as to, what happened to the first set of legal documents: Lt. Boozel, COII Weaver, COII Hudson, and two unknowns were removed from 7-3pm Unit #1 shift. (Sgt. Boozel was promoted to Lieutenant - moved to midnight). Mrs. Ward has given the court contradictory and misleading statements.

7. The letter plaintiff gave to Mrs. Ward did not contain any inappropriate statements. She reassigned plaintiff because of her involvement and during prior sessions: She was having inmates', officers, Mrs. Finucane, Mr. K. Dunne, to startle me while in therapy by hitting the door, officers' rushing the door like they were coming to attack me,

-8-

Mrs. Finucane and Mr. Dunne would come out of their offices stare at me until plaintiff looked at them, then, they'd rush back into their offices; these actions by her caused plaintiff to urinate on myself twice. When plaintiff told Mrs. Ward to stop what she was doing - she played dumb, and, said, "what are you talking about?" I said, "you know exactly what I'm talking about." See, Attachment #7. The Letter plaintiff gave to Mrs. Ward is also attached to this Declaration, plaintiff was trying to get her to recognize, what her personal problem was based on the deliberate indifferent/personal abuse conduct she was doing when "No one was looking" etc. See, Attachments #22-24. (Marked by astrics). On Dec. 17th 2015 Mrs. E. Soffe, S.W. told plaintiff, "when you challenge a situation and your wrong, then, when it's really happening you have no credibility." Plaintiff told her, "when you know crimes are being committed you have an obligation to "Report It", to Commissioner, Secretary's offices' and State Police." Mrs. Soffe stated, "that whatever happens will be a group decision." Plaintiff said, "that can't happen because people in the group (SNU Team) are causing the problems." We have not spoken since this time.

8. The Attrny. Gen. Opp. Mtn. pg. 11 and B. 15-16 Administrative Remedies Plaintiff cannot exhaust remedies that are not being fairly made available. See, Attachments #25-31 and 32-36 NBCI Unit #2 Prison Staff COII's R. Reike and T. Warnick 3-11pm prevented these Appeals from being Appealed with the Commissioner's and IGO offices'. To include, ECF No. 1 Declaration P3-7 attachments with Letter to the commissioner and their response failing to process and investigate "Referral Complaints". The State Defendants' by their own speech

-9-

State," pg. 15 btm. that the Defendant has forfeited their right to raise non-exhaustion as a defense..." Plaintiff has sufficiently shown that I have suffered 7 years of actual prejudice to my ability to proceed with multiple protected legal claims:

1. inability to meet filing deadlines, ECF No. 1 Declar. P 5-6;
2. inability to file claims (above P6);
3. inability to receive relief from pending matters;
4. It is clearly established by law that D.O.C and its facilities must provide Due Process by the wording of their regulations. See, ECF #4 Supp. Complnt. pg. 1 at 5 and pg. 3 at III. Exhaustion.

9. Plaintiff has provided sufficiently serious injuries that cannot be considered de minimus in regard to retaliations. ECF #23 Declartn. P11 and attached Medical records #6-15 and Attachments # 7-9 Medical records, should be enough evidence that is shocking. See, ECF No. 1 Declartn P 3-7 and attachments are undisputed.

10. Attrny Gen. Mtn. Opp. pg. 20-21 There is a causal link between plaintiff being poisoned by food, medicines, etc. to cause diabetes and additional ulterior motives can be inferred based upon the medical records provided the court. See, Attachments #37-39. And the video tape documentary evidence of April 28th 2014 NBCI C & D tiers holding cell, where plaintiff was being physically abused while unconscious (By Sgt. B. Iames DKC-11-0614 Defendant and Sgt. Forney), cannot be considered "Visible Fiction." Plaintiff has also demonstrated by physical scarring etc., that without a doubt was being poisoned. See, ECF #4 Supp. Complnt. at FACTS II. second paragraph pages 2-3.

11. The Office of the Attrny. Gen. Since 2008 DKC-08-1027 Mrs. Asst. Attrny. Gen. Nichole Gatewood, Stephanie lane-Weber, Doriane Meloy

-10-

<mark>Case 8:15-cv-03040-DKC Document 29 Filed 05/23/16 Page 11 of 13</mark>

and Laura Mickett, Case# 03-C-11-11625, Alan D. Eason, Asst. Attrny. Gen. Case# 24-C-09-001424 AA. See, Attachments # 43-44. And each case submitted up until DKC-15-3040 every person assigned to those cases and inbetween had actual and constructive knowledge that Plaintiff was being:¹ singled-out,² harassed,³ physically and mentally abused,⁴ discriminated against,⁵ peronally brutalized by ECI, NBCI, and RCI prison staff, medical staff, and Psychology staff. Plaintiff being caused and subjected to death twice while exercising my rights constitutionally based. Should have required the "Fiduciary Responsibility" of the Attorney General's office to act with prudence, in a manner that sufficiently protected the plaintiff's life, rights, health, and mental health of a citizen of the State of Maryland. And who's potential and lawfully should not be in the custody of the Dept. of Corrections. See, Exhibit #1, Exhibit #2 pg. 1-3. Multiple False Reports used to keep plaintiff falsely incarcerated and forcefully held against my will in a Max.II facility seven (7) years. See, Attachments # 40-42. Also, Attny. Gen. Exhibit 10 pg. 2 at 1, 2, 15, 17, 19, 23, 24, 26 ARP Index. A genuine dispute of material fact.

  Officer S. Henrich actions is addressed (above P6).
Warden Bobby P. Shearin had actual knowledge of the threats and dispicable actions against plaintiff while under his former authority. He had to get involved to "Save plaintiff", ECF #1 Declartn. P6 and ARP attachment pg. 2 "Bobby Shearin shows-up suddenly while officer Knox opens the utility closet door to tell several inmates 'they gotta go in the rec. hall'"... malicious intent can be inferred. No meaningful actions taken to remove plaintiff from known calculated attempts to harm.

12. The Attrny. Gen. Opp. Mtn. pg. 28 I. There is a sufficiently

<mark>-11-</mark>

serious link between NBCI inmates and RCI inmates (who the majority have been moved;[1] off SNU tier to A, B, C and back specific one's,[2] out of the prison,[3] to other units of RCI compound , especially, once the Court processed the complaint. This is a major reason why preliminary and permanent injunctions are needed because RCI staff constantly rotate inmates). These actions were the same (as NBCI unit #1 and #2), and may show deliberate indifferent conduct where the fact remains, that both Chelsea Finucane, Amber Ward, Lt. Boozel, M. Bible, Lt. D. Newlin (all) which includes the ladies of Psychology are related to unserved Defendant Mrs. Laura Booth, Psy. NBCI SNU coord.. Their actions can be inferred, and or, they were trying to get plaintiff to attempt suicide, strike-out at officers, inmates, or staff so they could [A] take away my good days (again), [B] send me back to North Branch, [C] take away plaintiff's visits (again) with the help of staff and specific inmates. See, ECF #23 Declartn. pg. 4 P9. Without a permanent injunction, it would be left open for RCI prison staff to randomly do the same thing again. D.O.C regulations prohibit prisoner abuse and inmates having control over other inmates, and staff abusing their authority and influence.

The overall conditions of confinement may show a genuine dispute of material fact, and, where deliberate indifferent conduct toward safety, mental health, medical needs, personal abuse, and constitutional rights is apperant at two separate D.O.C locations. The Attorney General State Defendants have adopted ECF #21 material facts "plaintiff's well pleaded material facts may be taken as admitted..." Opp. Mem. pg. 14 III. Legal Standards.

I have read the above statements and hereby declare

With penalty of perjury made subject to 28 U.S.C § 1746 that the foregoing is true and correct.

Respectfully Submitted,

x /s/ Emmanuel E. Sewell
Emmanuel E. Sewell.
RCI #266-100 1-D-21
18701 Roxbury Rd.
Hagerstown, MD 21746-9540

DATE: May 10, 2016

## CERTIFICATE OF SERVICE

I, hereby certify this 10th day of May, 2016, a copy of the foregoing "Declaration In Opp. 13 pgs., Medical Records #7-9, And Legal Documents #1-6 and 10-44 Pages of Exhibits & Letters # was mailed postage prepaid put in Unit #1 Mailbox in RCI Prison Officials care as an indigent in accordance to mailbox rule to:

Hon. Deborah K. Chasanow
U.S. D.C For MD.
200 U.S. Courthouse
6500 Cherrywood Ln.
Greenbelt, MD 20770-1249

Brian E. Frosh, Attrny. General
Nicholé C. Gatewood, Asst. Attrny. Gen.
MD. Office of the Attorney General
Corr. Lit. Division
200 St. Paul Pl- 18th Floor
Baltimore, MD 21202

x /s/ Emmanuel E. Sewell
Emmanuel E. Sewell pro se.

-13-